# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, NOVEMBER TERM 1847, AT DEDHAM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE, } Justices.
Hon. CHARLES A. DEWEY, }

---

James Marshall & others *vs.* Isaac N. Crehore & another.

Under the Rev. Sts. *c.* 103, a joint tenant or tenant in common, though disseized, may maintain the process of petition for partition, if he has a present right of entry, as he might under the previous statutes.

Before the passing of *St.* 1850, *c.* 278, a respondent, in the process of petition for partition, had no remedy for the improvements which he or those under whom he claimed might have made on the premises of which partition was sought.

This was a petition for partition of land in Dorchester, and was submitted to the court upon the following statement of facts, which was agreed for the purposes of this case only:

" Mary Marshall died unmarried and intestate in the year 1830, leaving the real estate described in the petition unincumbered by debts or mortgage. She left neither parent,

brother nor sister living at the time of her deceas... She formerly had two brothers; John, who died more than sixty years ago, and it is not known that he left any children; and Josiah, father of the petitioners, who died about thirty years ago, leaving ten children, viz. Josiah; Mille, who married Jesse Holmes; Polly, who married David Lakins; Stephen, Elisha, and John; Sally, who married Joseph McLean; and the three petitioners, James, Isaac and George. Three of the children of the said Mary's brother Josiah died in her life time; to wit, Josiah, jr., Elisha, and Sally McLean; and two of them, to wit, John, and Polly Lakins, since said Mary's decease. In the year 1831, Stephen, one of said Josiah's sons, conveyed his right, by a quitclaim deed, to Jesse Holmes, who married said Josiah's daughter Mille; said Holmes having before obtained the shares of John, and of Polly Lakins. Afterwards, in the same year, said Holmes, and Mille his wife, conveyed the whole in fee simple, with warranty, to Edward Crehore, who immediately took possession thereof, and afterwards conveyed one half thereof to Isaac N. Crehore, (the respondent,) and subsequently conveyed the other half to him in mortgage; and the said Edward and Isaac N. have been in undisturbed possession, and have held exclusive possession of the premises ever since; and said Edward and Isaac N. made improvements, and erected a building or buildings thereon, and have ever since claimed the absolute title thereto, and ownership of the entire premises."

*Richardson*, for the petitioners.

*Wilkinson & Safford*, for the respondent.

Shaw, C. J.   The title of the petitioners to three sevenths of the described estate seems established by the facts agreed. Mary Marshall died seized within twenty years, intestate, unmarried, without parent or brother or sister, but leaving, as her heirs, the children of a deceased brother, of whom ten survived their father, but seven only survived the said Mary, and were her heirs, taking one seventh each.

The defence is, that the respondents have disseized the

petitioners, by having taken a conveyance in fee, with cov-
enants of warranty, from four of the heirs and tenants in
common of the whole estate; under which they have en-
tered and held exclusive possession, sixteen or seventeen
years, claiming title to the whole, and made improvements
and betterments.

Assuming that a conveyance, by one tenant in common, of
the entire estate, to a stranger, in fee, with warranty, and an
entry under it by the grantee, claiming the whole, is to be
regarded as a disseizin of the cotenant, the question is,
whether the cotenant thus disseized, having a right of entry,
can have this process for partition.

The case of *Barnard* v. *Pope*, 14 Mass. 434, is in point
for the petitioners, and must, we think, govern the case, unless
it has been overruled or modified by subsequent decisions, or
by the revised statutes, changing the law under which that
case was decided.   That case was like the present, in this,
that some of the tenants in common made a conveyance of
the whole, to the exclusion of the petitioner, who proved his
right as tenant in common, under which conveyance the
respondent entered, claiming the whole estate, and held ex-
clusive possession.   It was held, that a tenant in common,
though out of possession, and technically disseized, having a
present right of entry, might maintain this process.   The
court remark upon the case of *Bonner* v. *Proprietors of
Kennebeck Purchase*, 7 Mass. 475, in which, in a very brief
report, it was stated, that an actual seizin was necessary.
That general rule had, in the mean time, in effect, been over-
ruled by *Wells* v. *Prince*, 9 Mass. 508, in which it was held
that proof of title as tenant in common, and a right of entry,
were sufficient.   4 Dane Ab. 742, 743.   This was affirmed
in Maine.   *Baylies* v. *Bussey*, 5 Greenl. 157.   In *Rickard*
v. *Rickard*, 13 Pick. 251, it was held that an adverse posses-
sion, by one tenant in common, against another, continued
over twenty years, was a bar to a petition for partition.   This
affords an implication, that if the right of entry still remained,
the process would lie.   The same rule is substantially adopted

in other States, though there is some difference in the terms of their statutes regulating partition. *Smith* v. *Burtis*, 6 Johns. 215. *Clapp* v. *Bromagham*, 9 Cow. 530. *Lloyd* v. *Gordon*, 2 Har. & M'Hen. 260. *Call* v. *Barker*, 3 Fairf. 320. The general result of the cases seems to be, that when the right of the party is not barred by lapse of time, by descent cast, or otherwise, this process lies.

No judicial decision has occurred to affect the authority of *Barnard* v. *Pope;* on the contrary, cases have occurred which imply that the law, as there decided, is correct.

The remaining question is, whether the law has, in this respect, been altered by the revised statutes. An argument for the respondents was founded on the difference of phraseology between the revised statutes and the old statute, on which the case of *Barnard* v. *Pope* was decided. The Rev. Sts. *c.* 103, § 1, provide that "all persons holding lands as joint tenants, coparceners, or tenants in common, may be compelled to divide the same;" and by § 2, "any one or more of the persons so holding lands may apply, by petition, for a partition of the same." The language of *St.* 1783, *c.* 41, § 1, is, "that any person *interested with others, in any lot, tract of land,* or other real estate, making application," &c. may have partition. The argument, an ingenious and plausible one certainly, was, that the words of the earlier statute were large enough to embrace the case of persons having rights and interests in land without actual seizin; but that the revised statutes intended, by the term "holding," to restrict the remedy to the case of persons actually seized, with others, as tenants in common, and to exclude this remedy, if the petitioner had been disseized, at the time of the application. But we think that such was not the object and purpose of the revised statutes, nor is such the legal construction and effect of them. The word "land," in the revised statutes, imports every species of real property; and we think the word "hold" does not limit its operation to the case of a seizin *de facto* and actual possession, but well applies, in its legal significance, to lands of which one has a good title

with a present unconditional and unqualified right of entry. That such was the sense in which it was understood in the revised statutes, and intended to be used, may reasonably be inferred from the other provisions in the same code, in which it is provided that one, having such title and right of entry, may, without an actual entry, bring a real action, and count on his own seizin.

But to consider this not upon the mere effect of the words "holding lands," but on a more general view of the revised statutes, it may be proper to examine them somewhat more at length. There is no one department of the law, in which the revised statutes have made alterations more radical and extensive, than that of the law of real property, both as it regards the rights of property, and all the remedies for asserting and protecting them. They have taken away the writ of right, all writs of formedon, and all other real actions, except the writ of entry, and that in its simplest form, in which the demandant counts on his own seizin, and a disseizin by the tenant, leaving all the modes by which title can be acquired, transferred or lost, to be matter of proof, to be determined by the established rules of law. The right of action and the right of entry are made coëxtensive, subject to the same limitation of twenty years, with the usual exceptions and saving clauses, in case of disability ; and a right of entry is made equivalent, in such writ of entry, to an actual seizin. Rev. Sts. c. 101. (See commissioners' notes.) These large alterations in the law of real property, and the remedies respecting it, must be kept in view, in construing the provisions of the revised statutes upon collateral and kindred subjects, adopted at the same time, of which partition is one. Rev. Sts. c. 103. The commissioners, by their note, (in loco,) indicate what was their purpose, in these provisions. They remark, that the provincial statutes, and also the St. of 1783, c. 41, seem to have been intended to furnish an amicable remedy, where there was no dispute as to titles, or as to other material facts ; that this was soon changed by St. 1786, c. 53 providing for the trial of all controverted questions, by which

in effect, this process by petition was converted into an adversary suit. But as this was done indirectly, and, as it were, unintentionally, the statute regulations on the subject were few and incomplete. The commissioners then declare, that in this title they have endeavored to supply this defect, that is, to adapt all the details of proceeding to the actual character of the process, that of trying and adjusting all controverted titles and questions of fact, necessarily arising under it, as an adversary proceeding. In accomplishing this purpose, they avow that they have been governed by the opinions and judgments of the courts, in the practice under the existing statutes, and aided by the revised code of New York. The decisions hereinbefore cited, including *Barnard* v. *Pope*, had been made before the revised statutes were framed, and were among those alluded to. It cannot, therefore, be reasonably concluded that it was the intention of these commissioners, by the use of the word "holding," to take away a beneficial remedy from a tenant in common, technically disseized, but who had a good title and a present right of entry.

But we think the general tenor of *c.* 103 indicates that it was intended to make this proceeding, by petition for partition, to a much greater extent than formerly, an adversary proceeding, to try and decide controverted questions of title, and make it, to a much greater extent, binding and conclusive upon parties and privies, and this, not as to the possession only, but as to the title. Sect. 33 provides that the final judgment shall be conclusive as to all rights, both of property and of possession, of all parties and privies to the judgment, including all persons who might by law have appeared and answered to the petition, with certain limited exceptions. Considering that a judgment, on petition for partition, is to have this binding effect upon titles, very ample provisions are made for giving more effectual notice to parties interested, and providing for disabilities of absence, infancy, coverture and the like, and in case of eviction by either of the tenants from his property, for a new partition, betterments, and for recovering back of money paid for equality of partition

Whether, therefore, we look at the avowed purpose of the commissioners, or at the various new provisions which they have proposed, and which have been adopted and sanctioned by the legislature, the court are of opinion that it was not intended to alter the law, so far as to bar one, who has title as a tenant in common or joint tenant, with a present right of entry, from having this process by petition for partition. We think it was rather their intention to adapt it to the purpose of trying controverted questions of title, and making the judgments under it binding, in all cases where one claims and can maintain his title and right of entry against any one controverting that title and claim, in whole or in part, and whether such adverse title is maintained by the respondent, on the ground of documentary title, disseizin, adverse possession, or otherwise.

One argument for the respondents, and one which had weight with the court, was this; that if the tenant in common, being disseized, were compelled to resort to his writ of entry, the tenant would have a remedy for his improvements ; whereas, under a petition for partition, he cannot. This may be a consequence, which would be inequitable, and may not have been foreseen by the legislature; but we think it cannot alter what is otherwise the obvious construction of the statute.

If the law, as it now stands, does not provide any mode for securing to a respondent, who has entered under a title supposed to be good, the benefit of his improvements, it is for the legislature, if they judge it expedient, to extend the law of improvements to cases of partition, either by authorizing commissioners to make partition so as to give the respondent that part of the common estate, on which his improvements are made, if practicable, deducting the value of them from the aggregate value of the estate to be divided, or by assessing the value of the improvements on the whole estate, and making the share, payable by either, a lien on his property, or otherwise.*

---

* By *St.* 1850, *c.* 278, it is provided that a respondent, in a petition for

But perhaps a more decisive consideration is, that if a tenant in common, who is thus disseized, cannot have his petition for partition, but must resort to his action, he has only to make an actual entry. The case supposes that he has a right of entry. This entry, therefore, would be lawful, and no action of trespass would lie against him, supposing, as in most cases the fact would be, that he can enter without actual force. He is then a tenant in common in possession, actually holding with the other cotenants, and no exceptions could be taken to his petition for partition. To decide, therefore, that one disseized could not have partition by petition, would not much tend to secure to the respondent his improvements.

*Judgment that partition be made, as prayed for.*

partition, shall be entitled to compensation for the value of any improvements; such value to be ascertained in the same manner as is provided for tenants in real actions, by the Rev. Sts. *c.* 101.