## J. C. SPIGHT VS. ISAAC WALDRON.

EQUITY JURISDICTION: *Partition of lands. Legal title.*

Where the complainant files his bill for a sale of lands for partition, the right to such relief implies a joint ownership between the complainant and the defendant, and the special remedy is not framed on the predicate that the complainant may litigate and establish his right against the defendant, and then in the same suit have a sale for partition. The rule is, that a court of equity will never grant the relief when the com plainant's title is denied, or is suspicious, until he has established his title at law. Partition can only be made between those in actual or constructive possession; other claimants must establish their right by suit at law, and obtain actual seizure, before they can demand partition. A mere right of entry will not sustain a proceeding for partition.

APPEAL from the Chancery Court of *Tippah* County.

Hon. ARTHUR E. REYNOLDS, Chancellor.

All the material facts are stated in the opinion of the court.

It is assigned for error:

1. Said chancery court erred in ordering his said bill of complaint to be dismissed, and in refusing the relief prayed for.

2. If it was deemed that other persons should be parties to the suit, the cause should have been remanded to the rules, with leave to make them parties.

3. Said court erred in considering as testimony, and in regard-

ing certain statements in the deposition of witnesses for appellee, when objection was made.

*Potter & Green* and *W. T. Falkner*, for appellants:

Both parties deraign title from the same source; appellant need prove nothing more. Gordon *v.* Sizer, 39 Miss., 819. Having proved our one-third interest in the land, relief should be granted. The proof does not sustain the bill. The code intends to prevent this kind of secret trusts. Code 1857, p. 359, § 5. The covenants of general warranty operate as an estoppel. Her. on Est., §§ 232, 272, 332–3; Carver *v.* Jackson, 4 Pet., 86; 11 How. (U. S.), 325; Williams *v.* Claiborne, 1 S. & M. Ch., 365; Rawle on Cov., 427; 3 Washb. on Real Prop., 3157; 4 Pet., 85; Stevenson *v.* McReary, 12 S. & M., 9; Robbins *v.* McMillan, 4 Cush., 434; 3 Wash. on Real Prop., 91; Story Eq. Pl., §§ 28, 36, 846, 853 and notes; Mitf. Eq. Pl., 45; 10 Pet. (U. S.), 177, 209; 9 Pet., 249; 4 How. (U. S.), 316, 317; 1 Pet., 376; Adams Eq., 339–40; 23 Miss., 81; Mitchell *v.* Wood, 47 id., 231; Andrews *v.* Wilkes, 6 How. (Miss.), 554.

*A. H. Handy*, for appellee:

As presented by the pleading, no question can be raised that the property given in consideration for the deed was the property of Tatum, and fraudulently held by his wife to defeat creditors; for, 1. No such issue is presented. 2. Tatum's wife or mother are not parties. 3. The testimony fails to show that Mrs. Tatum's right to the land was not valid and *bona fide.* It is proved that the property is Mrs. Tatum's, and there is no testimony or circumstance whatever to disprove this. The substance of the transaction was, that a title should be made to Waldron. The deed to Tatum, and from him to Meek, and from Meek to Waldron was made at the same time, and filed for record at the same time; they were all parts of the same transaction. The seizure by Tatum was but instantaneous. No such title therefore vested in Tatum as could be the subject of a lien of a judgment against him. 4 Kent Com., 38, 39 (margin) ed., 7. As to the question of estoppel, see 2 Smith Lead. Cases, 655 (top p.), 5 Am. ed. and

cases; Herm. on Est., § 354, p. 364. A grantor conveying with
general covenants of warranty is estopped from setting up against
his vendee or assignees.   2 Smith Lead. Cases, *supra*, 627.   But
this rule has no application in this case.   The rule that the
grantor and his assignees are estopped to deny his title does not
apply to a trustee nor to a grantor who has purchased for the
benefit of another and conveyed to him.   1 Greenl. Ev., § 24 ;
Jackson *v.* Mills, 13 Johns., 463. . Tatum held a trust estate, but
no beneficial interest in the land.   Kelly *v.* Mills, 41 Miss., 275 ;
Walton *v.* Hargroves, 42 id., 26 ; Jones *v.* Sasser, 1 Dev. & Batt.
(N. C.), 464.   The title of the complainant is doubtful, and a
bill for partition cannot be entertained until the title is estab-
lished at law.   Shearer *v.* Winston, 33 Miss., 151; Price *v.*
Crone, 44 id., 577.

SIMRALL, J., delivered the opinion of the court.

The complainant became the purchaser at sheriff's sale, of the
land in suit, under a judgment recovered against Z. T. Tatum.
This purchase was made in 1870, of the undivided one-third in-
terest of said Tatum in the lands.   The complainant traces the
title to the lands as follows, viz: On the 20th of August, 1866,
one J. W. McCarley conveyed to Tatum the one-third share or
interest of the west half of sec. 5, T. 3, R. 5 east, and on the same
day Tatum conveyed to one Martin Weeks the undivided one-
third of the southwest 1-4 and the west 1-2 of the northwest 1-4
of sec. 5, T. 3, R. 5 east, and on the same day Martin conveyed
the same lands to defendant Waldron.   These several deeds con-
tained general covenants of warranty.   The defendant Waldron
was owner of the other two-thirds of the land, derived from other
grantors.

The complainant claims that he is owner of one-third of the
land by purchase as aforesaid ; that the chief value of the prop-
erty is, by reason of a water, saw and grist mill on the premises ;
that the premises cannot be equally divided, and the relief sought
is a sale and division of the money between himself and Waldron,
according to their interests.

The answer of Waldron denies that the complainants acquired any interest, legal or equitable, by his purchase; says on information that Tatum bargained for said lands from one E. R. Smith, but that Smith had no title, and Tatum never made any payment. That McCarley made a deed to the land to Tatum, but that he had no title; says that the legal title is in Garrett and Wiggington. The amended answer states that the wife of Z. T. Tatum purchased the lands from one Smith, and that the purchase money was paid out of her separate means. That the deed from McCarley to Tatum was not for the purpose of conveying the title to him, but that the deed was made to him as trustee for his wife, and for no other purpose.

Meek, in his deposition, says that it was supposed to be necessary for McCarley to make the deed to Tatum, and the latter to him in order to perfect the chain of title. Tatum never claimed to own the land, nor did he ever pay anything for the land. Smith had some interest in the mill, and Mrs. Tatum, the wife, gave Smith another piece of land for that interest. J. W. McCarley, in his deposition, states that Z. T. Tatum bargained with him for the land, not in his own, but in his mother's name. He further says that it is the same land which he sold to Smith, and which Smith sold to Mrs. Rebecca Tatum, but that he made the deed to Z. T. Tatum, because he received the pay from his mother through him as agent. He says Tatum never did own the land and never claimed it. Mrs. Tatum paid him all the purchase money. Tatum told witness that the property that paid for the land was his mother's. Booker Pate, who was present, says that the deed was made to Tatum for the purpose of fixing the title in Waldron. Tatum at no time had interest in the property. Tatum says, in his deposition, that the deed was made to him in order to save the necessity of his wife's going to Ripley. That it ought to have been made to his wife; that the consideration was in part paid in land and the products of the mill. The land used belonged to his wife. Tatum was insolvent. The testimony is so meagre that he real transaction between the parties is obscure. We may as-

sume as the starting point that J. W. McCarley had the legal title to the property. He says that he had sold the land to Smith, and Smith sold to Mrs. Rebecca Tatum, who was the mother of Z. T. Tatum; but McCarley retained the legal title. Smith received a parcel of land which belonged to Mrs. Tatum, for his interest in the mill. One witness says that must have been such interest as he acquired from McCarley, and which he sold to Rebecca Tatum; McCarley having received all that was due him, was willing to convey, inasmuch as what was due to him had come through the hands of Tatum, and as shown by other testimony. Since Waldron had become the purchaser of the property, the plan adopted in order, as somebody suggested, to keep up the chain of title, was for McCarley to convey to Tatum, he to Meeks, and Meeks to Waldron. If it had been convenient for the wife of Tatum to have gone to Ripley, the deed would have been from McCarley to her, and through her to Waldron. If this view be warranted by the testimony, then Tatum was but the medium through whom the title passed to Waldron. The witnesses are unanimous that Tatum paid nothing and that he asserted no claim to the property. On the same day that the deed was made to him, he conveyed to Meek, and three days after, Meek conveyed to Waldron. Without undertaking to consider, for the purpose of decision, whether Tatum had such beneficial interest in the property as would pass the title to the complainants as purchaser under the judgment, the defendant Waldron asserts an exclusive title and right to the entire property, and claims and holds adversely to the claimants.

The relief claimed by the complainant is a sale, and partition of the money, instead of the land itself. The assertion of such right implies a joint ownership between the complainant and the defendant. The special remedy is not framed on the predicate that the complainant may litigate and establish his right against the defendant, and after that is done, in the same suit, have a sale of the joint property.

The rule is that a court of equity will never grant relief when

the complainant's title is denied or suspicious, until he has established his title at law.   Shearer *v.* Winston, 33 Miss., 151. Partition can only be made between those in the actual or constructive possession.

Other claimants must establish their right by suit at law, and obtain actual seizin before they can demand partition.   Price *v.* Crone, 44 Miss., 577 ; Clapp *v.* Bromagham, 9 Cow., 530 ; Wilkin *v.* Wilkin, 1 Johns. Ch., 111.   A mere right of entry will not sustain a proceeding for partition.   Brock *v.* Eastman, 28 Vt., 658.

Conceding (but we express no opinion on the point) for the argument, that the complainant acquired a legal title to one-third of the land, the extent of his right, according to the case made in the record, is a right of entry.   Waldron derived his right to two-thirds of the land from grantors, strangers to this record ; he claims a right to the other third adversely to the complainant. If, therefore, the complainant has a legal right, it confers the right of entry and no more.

He must vindicate that right and acquire a seizin in fact by suit at law before he is entitled to a partition, or if that cannot be had, then in its stead, a sale and partition of the money.

We think, therefore, the decree of the chancellor dismissing the bill was right, and it is affirmed.